UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENISE D. DEES,

                    Plaintiff,

          v.

ALLSTATE INSURANCE
COMPANY,

                 Defendant.

CASE NO. C12-0483JLR

ORDER ON DEFENDANT'S
MOTIONS FOR SUMMARY
JUDGMENT

## I.   INTRODUCTION

Before the court are Defendant Allstate Insurance Company's ("Allstate") three motions for partial summary judgment against Plaintiff Denise D. Dees.  (1/31/13 Mot. (Dkt. # 36); 2/7/13 Mot. (Dkt. # 40); 2/12/13 Mot. (Dkt. # 45).)[1]  Ms. Dees opposes all

---

[1] Allstate's filing of three contemporaneous dispositive motions within a two-week period violates the court's Local Rules.  *See* W.D. Wash. Local Rules CR 7(c)(3).  Nevertheless, the court previously exercised its discretion and granted Allstate's motion requesting that the court consider all three motions despite the violation.  (*See* 2/19/13 Ord. (Dkt. # 55).)

1    three motions in part.  (2/15/13 Resp. (Dkt. # 53); 2/25/13 Resp. (Dkt. # 57); 3/4/13 Resp.

2    (Dkt. # 60).)  The court has considered the motions, all submissions filed in support and

3    opposition thereto, the balance of the record, and the applicable law.[2]  Being fully

4    advised, the court GRANTS in part and DENIES in part Allstate's 1/31/13 motion

5    regarding damages (Dkt. # 36), GRANTS Allstate's 2/7/13 motion regarding Ms. Dees'

6    PIP claim (Dkt. # 40), and DENIES Allstate's 2/12/13 Motion (Dkt. # 45).

7                        II.    FACTUAL AND PROCEDURAL BACKGROUND

8          Ms. Dees brings this action against her auto insurer, Allstate, alleging that Allstate

9    failed to fulfill its contractual obligations to her and acted unreasonably by denying her

10   benefits.  On May 21, 2006, Ms. Dees was injured in a two-car accident.  (Compl.

11   (Dkt. # 1) at ¶ 2.3.)  An uninsured driver was at fault.  (*Id.* at ¶ 2.4.)  Allstate insured Ms.

12   Dees under an auto insurance policy at the time of the accident (hereinafter referred to as

13   the "Insurance Contract").  (1/31/13 Mot. at 3.)

14         At issue in this lawsuit are two types of coverage in the Insurance Contract:

15   Personal Injury Protection ("PIP") and Underinsured Motorist Coverage ("UIM").

16

17

_____

18

19        [2] Ms. Dees requests oral argument as to Allstate's 1/31/13 Motion.  (*See* 2/15/13 Resp. at
     1.)  However, oral argument is unnecessary if it would not be helpful to the court and if neither
     party is prejudiced.  *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court
20   can decide the issue without oral argument if the parties can submit their papers to the court.");
     *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984).  Here, the court is familiar with the
21   nuances of this case, in many instances Ms. Dees does not dispute Allstate's contentions in its
     1/31/13 motion, the issues have been thoroughly briefed by both parties (in three separate
     motions), and oral argument would not be of assistance to the court.  Accordingly, the court
22   denies Ms. Dees' request for oral argument.

(Compl. at ¶¶ 2.1-2.2.)  The pertinent portion of the PIP coverage in the Insurance

Contract states:

> Allstate will pay to or on behalf of the injured person the following
> benefits.  Payments will be made only when bodily injury, sickness,
> disease, or death is caused by an accident arising from the ownership,
> maintenance or use of a motor vehicle as a motor vehicle.
>
> (1) Medical and Hospital Benefits
>
> All reasonable and necessary expenses incurred within three years from the
> date of the accident.  This covers medical, surgical, and dental treatment,
> professional nursing, hospital, and rehabilitation services.  Also covered
> are X-ray and other diagnostic services, prosthetic devices, ambulance services,
> medication, and eye glasses.  Other reasonable and necessary expenses
> incurred for treatment prescribed by licensed medical practitioners are
> covered.

(Boyd Decl. (Dkt. # 37) at 20.)  The Insurance Contract limits coverage of medical

benefits under PIP coverage to $35,000 per person.  (*Id.* at 6, 22.)

UIM coverage is designed to cover losses that the insured could have received

from the at-fault driver if that driver had insurance up to the UIM policy limits.  The

pertinent portions of UIM coverage in the Insurance Contract state:

> We will pay damages which an insured person is legally entitled to
> recover from the owner or operator of an underinsured motor vehicle
> because of bodily injury sustained by an injured person.
>
> ****
>
> The right to receive any damages and the amount of damages will be
> decided by agreement between the insured person and Allstate.
>
> If the insured person and we do not agree, then the disagreement will
> be resolved in a court of competent jurisdiction.

ORDER- 3

1  (Boyd Decl. (Dkt. # 37) at 23.)  The Insurance Contract limits claims under the UIM

2  portion of the policy to $100,000.  (*Id.* at 6, 25.)

3      Allstate paid Ms. Dees $21,274.83 under the PIP portion of the policy.  (1/31/13

4  Boyd Decl. (Dkt. # 37) at 2.)  On March 28, 2007, Allstate sent Ms. Dees a letter

5  effectively terminating her PIP claim.  (2/25/13 Resp. at 5.)  Allstate continued to

6  investigate Ms. Dees' UIM claim, though the parties dispute Allstate's methodology and

7  efforts.  (*See generally* 2/12/13 Mot.; 3/4/13 Resp.)

8      On February 23, 2011, Ms. Dees' attorney sent Allstate a UIM demand letter

9  requesting payment of $100,000—the UIM policy limit.  (Wyche Decl. Ex. M (Dkt. # 47-

10 2).)  On June 9, 2011, Allstate sent Ms. Dees' counsel a letter counter-offering $8,000, in

11 addition to the amount it had already paid out under the PIP portion of the policy.

12 (2/15/13 Lee Decl. Ex. 8 (Dkt. # 54-8).)  Unable to reach a settlement, Ms. Dees filed the

13 instant lawsuit in King County Superior Court on March 1, 2012.  (*See* Compl.)  Allstate

14 removed the case to this court.  (*See* Notice of Removal (Dkt. # 1).)

15     Ms. Dees brings four claims:  (1) that Allstate breached the Insurance Contract by

16 failing to pay full amounts owing under the UIM and PIP policies; (2) that Allstate

17 breached its duty of good faith by unduly giving its own financial considerations more

18 weight than those of Ms. Dees; (3) that Allstate violated the Washington Consumer

19 Protection Act ("CPA"), RCW 19.86.010 *et seq.*; and (4) that Allstate violated the

20 Washington Insurance Fair Conduct Act ("IFCA"), RCW 48.30.10-.15.  (Compl. ¶¶ 4-5.)

21

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### III.    DISCUSSION

Allstate's motions for summary judgment request the following:

- A determination that Allstate's maximum potential liability for breach of contract is equal to the Insurance Contract's UIM and PIP coverage limits, less offset for amounts it paid Ms. Dees under the PIP policy.  (1/31/13 Mot. at 2.)

- Dismissal of Ms. Dees' common law bad faith claim related to its handling of her PIP claim as time barred.  (2/7/13 Mot. at 2.)

- A determination that Allstate is not liable for bad faith as a matter of law for Allstate's handling of Ms. Dees' UIM claim between May 21, 2006 and February 24, 2011.  (2/12/13 Mot. at 2.)

- A determination that if Allstate is liable for bad faith, its liability is limited to damages proximately caused by its bad faith conduct, not the underlying car accident.  (1/31/13 Mot. at 2.)

- A determination that Allstate's conduct prior to March 1, 2008, cannot form the basis of Ms. Dees' CPA claim because its liability for such conduct is time-barred. (2/7/13 Mot. at 2.)

- A determination that if Allstate is liable for violating the CPA, its liability is limited to damages to Ms. Dees' property or business proximately caused by its allegedly unfair or deceptive act.  (1/31/13 Mot. at 2.)

ORDER- 5

- Dismissal of Ms. Dees' IFCA claim related to Allstate's handling of her PIP claim because Allstate denied her PIP claim prior to IFCA's effective date.  (2/7/13 Mot. at 2.)

- A determination that if Allstate is liable for violating IFCA, its liability is limited to damages proximately caused by its allegedly unreasonable denial of Ms. Dees' claims.  (1/31/13 Mot. at 2.)

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.

**A.      Breach of Contract Damages**

Allstate asserts that if it is liable for breaching the Insurance Contract, its maximum liability for damages is limited to the policy limits of the Insurance Contract, offset by the amount Allstate has already paid Ms. Dees.  (1/31/13 Mot. at 5.)  The court

1 agrees, as does Ms. Dees.[3]  (*See* Dees Proposed Order (Dkt. # 53-1) at 2.)  An insured

2 may only recover damages up to the policy limits in an insurance breach of contract

3 action.  *Polygon N.W. Co. v. Am. Nat'l Fire Ins. Co.*, 189 P.3d 777, 789 (Wash. Ct. App.

4 2008) ("Washington law does not in fact force insurers to pay for losses that they have

5 not contracted to insure."); *Tribble v. Allstate Prop. and Cas. Ins. Co.*, 139 P.3d 373,

6 376 (Wash. Ct. App. 2006).  The Insurance Contract provides for a maximum PIP benefit

7 of \$35,000 and a maximum UIM benefit of \$100,000.  (1/31/13 Boyd Decl. at 6.)  The

8 parties do not dispute that Allstate has already paid \$21,274.83 to Ms. Dees from her PIP

9 coverage.  (*Id.* at 2; 2/15/13 Resp. at 2.)  Thus, the court GRANTS partial summary

10 judgment in favor of Allstate on Ms. Dees' breach of contract claim.  If Allstate is liable

11 for breach of contract, its damages for that breach are limited to \$113,725.17.[4]

---

[3] As discussed herein, this is the first of many issues that Allstate raises in its motion that Ms. Dees does not dispute.  Under these circumstances, the court wonders why Allstate needed to file three contemporaneous dispositive motions, as opposed to serving requests for admission on Ms. Dees.  The court also wonders why Ms. Dees agrees with many of Allstate's points, yet feels the need to file extensive responsive briefs that address points not actually raised by Allstate, such as speculation as to what damages Ms. Dees might present at trial. (*See, e.g.*, 2/15/13 Resp. at 13 (speculating on the breach of contract damages that Ms. Dees might present at trial, but not disputing Allstate's claim that such damages cannot exceed the policy limits of the Insurance Contract).)  Ms. Dees also taxes the court's time by responding to arguments Allstate does not make.  (*See, e.g.*, 2/25/13 Resp. at 17-18 (arguing that Ms. Dees' breach of contract claim is not time-barred, even though Allstate never asserts that it is); *id.* at 16-17 (arguing that the court should not dismiss her CPA claim entirely, even though Allstate does not ask the court to do so).)  The parties are advised that, in the future, they should confer and stipulate to agreed points, so as to avoid wasting judicial resources.

[4] In a breach of contract action, the insured is entitled to expectation damages—the amount he or she would have received under the contract but for the breach.  *Woo v. Fireman's Fund Ins. Co.*, 208 P.3d 557, 563 (Wash. Ct. App. 2009) ("The general rule regarding damages for an insurer's breach of contract is that the insured must be put in as good a position as he or she would have been had the contract not been breached.").  Ms. Dees asserts that she is also

1

**B.      Bad Faith**

2

**1. Statute of Limitations as to Ms. Dees' PIP Claim**

3

Allstate argues that Ms. Dees' claim that Allstate acted in bad faith by denying her

4

PIP claim is time-barred.  (2/7/13 Mot. at 13.)  The court agrees.  In Washington, an

5

action for bad faith under an insurance contract sounds in tort.  *St. Paul Fire and Marine*

6

*Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008).  Tort claims in Washington are

7

subject to a three-year statute of limitations.  RCW 4.16.080(2).  Ms. Dees' cause of

8

action for bad faith resulting from Allstate's handling of her PIP claim accrued when

9

Allstate denied coverage.  *See Lenk v. Life Ins. Co. of N. Am.*, 2010 WL 5173207, at *2

10

(W.D. Wash. Dec. 13, 2010).  Allstate denied Ms. Dees' PIP claim on March 28, 2007.

11

(2/7/13 Boyd Decl. Ex. D (Dkt. # 41-2) at 2.)  Ms. Dees filed the instant suit on March 1,

12

2012, more than three years after Allstate denied her PIP coverage.  (*See* Compl.)  Ms.

13

Dees concedes that she cannot assert a bad faith claim for any action that Allstate took

14

prior to March 1, 2009.  (2/25/13 Resp. at 19.)  Accordingly, the court GRANTS

15

16

entitled to incidental and consequential losses arising from Allstate's breach of contract.  (*See*
2/15/13 Resp. at 11.)  "Consequential damages are sustainable if they flow naturally and

17

inevitably from a breach of contract and are so related to it as to have been within the
contemplation of the parties when they entered into it."  *Pettaway v. Commercial Auto. Serv.,*

18

*Inc.,* 306 P.2d 219, 222 (Wash. 1957).  The court declines to rule on the availability of
consequential damages under the Insurance Contract because there are disputed issues of

19

material fact at this time as to Ms. Dees' damages.  The parties have also not briefed whether
Ms. Dees' damages, if any, were "within the contemplation of the parties" when they entered

20

into the Insurance Contract.  Nevertheless, even if Ms. Dees is ultimately entitled to
consequential damages for Allstate's alleged breach of the Insurance Contract, total damages,

21

including actual, incidental, and consequential damages for that breach, cannot exceed the
Insurance Contact's policy limits, offset by the amount Allstate has already paid.  *Polygon N.W.*

22

*Co.*, 189 P.3d at 789.

ORDER- 8

1    Allstate's motion for summary judgment as to Ms. Dees' bad faith claim arising from

2    Allstate's handling of her PIP claim based on expiration of the statute of limitations.[5]

3    **2. Allstate's Handling of the UIM Claim From the Accident to Receipt of Ms.
     Dees' Demand Letter**

4
5           Allstate contends that it cannot be liable for breaching its duty of good faith as a

     matter of law for its conduct in handling Ms. Dees' UIM claim between the time of the
6
     accident and the time it received her UIM demand letter.[6]  (2/12/13 Mot. at 2.)  Allstate
7
     argues that Ms. Dees presents no evidence that Allstate acted in bad faith during that time
8
     period and that no reasonable fact finder could conclude otherwise.  (*Id.* at 10-11.)  Ms.
9
     Dees argues that genuine disputes of material fact exist regarding whether Allstate
10
     considered all medical evidence in handling her UIM claim during that time frame.
11
     (3/4/13 Resp. at 18-23.)
12
            "To succeed on a bad faith claim, the policyholder must show the insurer's breach
13
     of the insurance contract was unreasonable, frivolous, or unfounded."  *Smith v. Safeco*
14
     *Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003).  Whether an insurer acted in bad faith is a
15
     question of fact.  *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 16 P.3d 574, 577 (Wash.
16
     2001).  If reasonable minds could differ as to whether an insurer's conduct was
17

18    _____

19    [5] Although the court grants summary judgment in favor of Allstate as to Ms. Dees' bad
      faith claim arising from Allstate's denial of PIP coverage, Ms. Dees' claim that Allstate acted in
20    bad faith in handling her UIM claim remains.

21    [6] The record contains evidence showing that Allstate assigned a UIM adjuster and began
      investigating Ms. Dees' UIM claim as early as May 2006.  (2/25/13 Lee Decl. Ex. 1.)  Ms. Dees'
      attorney sent Allstate a letter on February 24, 2011, demanding that Allstate pay Ms. Dees the
22    full UIM coverage limit, $100,000, to settle her UIM claim.  (Wyche Decl. Ex. M.)

1   reasonable, or if there are material issues of fact with respect to the reasonableness of the

2   insurer's action, then summary judgment is not appropriate.  *Smith*, 78 P.3d at 1277-78.

3         Summary judgment is inappropriate here.  There are disputed issues of material

4   fact regarding Allstate's consideration of Ms. Dees' medical information in assessing her

5   UIM claim.  Allstate contends that, until it received Ms. Dees' UIM demand letter, it

6   could not obtain Ms. Dees' complete medical records because it lacked authorization to

7   obtain those records.  (2/12/13 Mot. at 10.)  Allstate submits testimony that Ms. Dees'

8   attorney denied Allstate authorization to obtain Ms. Dees' medical records.  (2/12/13

9   Wyche Decl. ¶ 15.)  Ms. Dees submits directly contradictory evidence:  on December 4,

10  2008, Ms. Dees' attorney sent Allstate a letter disputing Allstate's claim that it did not

11  have authorization to obtain Ms. Dees medical records and attached two separate medical

12  authorizations, signed by Ms. Dees in 2006, allowing Allstate to obtain her medical

13  records until her claim was "legally concluded."  (2/25/13 Lee Decl. Ex. 26 (Dkt. # 58-

14  26).)  Allstate also contends that "nothing in [Ms. Dees'] interrogatory answers even

15  remotely relates to Allstate's investigation and handling of Plaintiff's UIM claim before it

16  received the UIM demand letter in February 2011."  (2/12/13 Mot. at 11.)  Yet, in her

17  answer to Allstate's Interrogatory #21, Ms. Dees states that Allstate "withheld medical

18  records from its own medical providers to the detriment of plaintiff's UIM and PIP

19  claims."  (Case Decl. (Dkt. # 46) at 10.)  Ms. Dees also answered that Allstate

20  "intentionally omitted facts and events from its claims file."  (*Id.*)

21        Viewing this evidence in the light most favorable to Ms. Dees, these allegations

22  relate to Allstate's handling of her UIM claim prior to receipt of a demand letter and raise

ORDER- 10

1   a genuine issue of material fact as to the reasonableness of Allstate's handling of that

2   claim.  The record shows disputed facts as to whether Allstate did or did not have access

3   to the records it needed to process Ms. Dees' UIM claim and whether it properly

4   considered all medical evidence in the case.[7]  Reasonable minds could differ as to

5   whether Allstate acted unreasonably in making a settlement offer based on potentially

6   incomplete medical records.  As such, the court DENIES Allstate's motion for partial

7   summary judgment on Ms. Dees' bad faith UIM claim.

8      **3. Damages**

9         Allstate asserts that if it is ultimately liable for violating its implied duty of good

10  faith under the UIM provisions of the Insurance Contract, it should be liable only for

11  those damages proximately caused by its alleged bad faith conduct.  (1/31/13 Mot. at 6-

12  7.)  The court agrees, as does Ms. Dees.  (*See* 2/15/13 Resp. at 9.)  Ms. Dees' bad faith

13  claim sounds in tort.  *St. Paul Fire and Marine Ins. Co.*, 196 P.3d at 668.  Claims for

14  damages under a bad faith claim are limited to those proximately caused by the insurer's

15  breach of duty.  *Id.*  However, "because bad faith is a tort, a plaintiff is not limited to

16  economic damages."  *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1035 (Wash.

17  Ct. App. 2000) (citing *Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 939 (Wash.

18

19       [7] Allstate argues that there is no genuine dispute that Ms. Dees denied it access to her
    medical records because Ms. Dees only authorized access for purposes of paying her PIP claim.
20  (3/8/13 Reply (Dkt. # 62) at 4-5.)  Allstate does not address Ms. Dees' attorney's December 4,
    2008 letter, in which Ms. Dees' attorney attached two medical authorizations, neither of which
21  limit Allstate's access to purposes of paying Ms. Dees' PIP invoices.  (*See* 2/25/13 Lee Decl. Ex.
    26.)  Ms. Dees, through her counsel, may very well have revoked authorization or otherwise
    restricted access to her medical records, but Allstate's arguments to that end only highlight that,
22  when viewing the record in the light most favorable to Ms. Dees, genuine issues of material fact
    exist.

1   1998)).  Rather, if Ms. Dees establishes bad faith at trial she will be entitled to recover

2   both financial and emotional damages proximately caused by Allstate's bad faith.  *Id.*

3        Moreover, Allstate goes too far in asking the court to rule, as a matter of law, that

4   Ms. Dees cannot assert any damages arising from her car accident as part of her bad faith

5   claim.  (*See* 1/31/13 Mot. at 6 (asking the court to exclude any damages caused by the

6   underlying car accident).)  As discussed below, some of the damages that Ms. Dees

7   allegedly experienced as a result of the automobile accident may have been covered

8   under the UIM provisions of the Insurance Contract but remain unpaid by Allstate.  If

9   Ms. Dees is able to establish at trial that these amounts remain unpaid in bad faith, then

10   she would be able to recover these damages.

11        The damages available to a plaintiff raising a tort claim for bad faith against a

12   carrier depend in part on whether the underlying policy provides first-party or third-

13   party coverage.  *See Graham-Bingham Irrevocable Trust v. John Hancock Life Ins. Co. USA*,

14   827 F. Supp. 2d 1275, 1288 (W.D. Wash. 2011) (distinguinshing between third-party

15   claims where an insurer owes or duty to defend or handles a claim under a reservation of

16   rights and first-party claims).  Washington law counsels the court to treat UIM coverage

17   like a first-party claim because under the UIM provisions of the Insurance Contract

18   Allstate has no duty to defend Ms. Dees; rather, Allstate "stands in the shoes of the

19   uninsured motorist."  *Barry v. USAA*, 989 P.2d 1172, 1176 (Wash. Ct. App. 1999).  If the

20   insured is making a first-party bad faith claim, then the court may not impose coverage

21   by estoppel.  *Graham-Bingham Irrevocable Trust*, 827 F. Supp. 2d at 1288 (citing

22   *Coventry Assocs.*, 961 P.2d at 939-40).  Further, "absent proof of coverage, the insured is

ORDER- 12

1   not entitled to policy benefits." *Id.* (citing *Coventry Assocs.*, 961 P.2d at 939-40).  In this

2   instance, however, there is a genuine dispute of material fact as to whether Ms. Dees is

3   entitled to unpaid damages arising out of her automobile accident that the UIM

4   provisions of the Insurance Contract covered.  If Ms. Dees can establish that she incurred

5   damages as result of the automobile accident and those damages are covered by her UIM

6   policy but remain unpaid in bad faith, then Ms. Dees is entitled to recover those

7   damages.[8]  Thus, the court GRANTS in part and DENIES in part Allstate's motion for

8   partial summary judgment as to its liability for damages under Ms. Dees' bad faith tort

9   claim.

10   **D.      Washington Consumer Protection Act**

11      **1. Statute of Limitations**

12          Allstate argues that Ms. Dees cannot base her CPA claim on anything that Allstate

13   did or did not do before March 1, 2008, because such claims would be time-barred.

14   (2/7/13 Mot. at 16.)  A CPA claim for damages has a four year statute of limitations.

15   RCW 19.386.120.  As Ms. Dees filed the instant suit on March 1, 2012, the statute ran on

16   any alleged conduct violating the CPA prior to March 1, 2008.  Ms. Dees does not

17   dispute this, nor does she assert that any of her claims should be tolled; rather, she argues

18   that the court should not dismiss her CPA claim entirely.  (2/25/13 Resp. at 16-17.)

19   Allstate is not asking the court to do that.  (*See* 2/7/13 Mot. at 16.)  Allstate is not liable

20   _____

21      [8] If Ms. Dees prevails on multiple claims of liability, she cannot recover more than once
    for the same injury.  That is, if she prevails on her breach of contract or IFCA claims and
22   recovers unpaid UIM coverage amounts, she cannot recover those same amounts resulting from
    Allstate's bad faith handling of her UIM claim.

ORDER- 13

1    for any allegedly unfair or deceptive acts that took place prior to March 1, 2008.[9]  In

2    order to prevail on her CPA claim, Ms. Dees must prove that Allstate committed an

3    unfair or deceptive practice after March 1, 2008.  Accordingly, the court GRANTS

4    summary judgment in favor of Allstate as to Ms. Dees' CPA claim with respect to any

5    alleged unfair or deceptive practice occurring prior to March 1, 2008.

6        **2. Damages**

7        Allstate asserts that, if it is liable for a CPA violation, it is liable only for those

8    damages to Ms. Dees' "business or property" proximately caused by Allstate's allegedly

9    unfair or deceptive practice but not any personal injuries resulting from the car accident.

10   (1/31/13 Mot. at 8).  Ms. Dees asserts that the CPA allows her to recover the cost of

11   medical bills she paid that Allstate should have paid.  (2/15/13 Resp. at 18.)

12

13

14       [9] Although Washington recognizes a continuing tort doctrine, no Washington court has

15   applied the doctrine to Consumer Protection Act claims in the insurance context.  *See Greene v.
     Young*, No. 58618-1-I, 2008 WL 2779015, at *15-16 (Wash. Ct. App. July 14, 2008)

16   (unpublished) (rejecting the plaintiff's contention that an insurance company's delay of
     payments was a continuing violation that tolled the CPA statute of limitations).  Further,
     Washington courts have not applied the doctrine to claims of bad faith.  *Walker v. Metro.*

17   *Casualty Ins. Co.*, No. C12-0173, 2013 WL 942554, at *4 (W.D. Wash. March 8, 2013).  The
     court concludes that applying the continuing tort doctrine or equitable tolling in this instance

18   would defeat the purpose of the CPA's four-year statute of limitations.  To the extent that Ms.
     Dees' CPA claim is based on Allstate's denial of PIP benefits in 2007, Ms. Dees would have

19   been aware of that denial as of March 28, 2007, the date she received the denial notice.  At that
     point, Ms. Dees could have initiated a CPA claim.  *Cf. id.* (decling to apply the continuing tort

20   doctrine to an insurance bad faith claim where the plaintiff would have been aware of the
     insurer's alleged bad faith action long before the statute of limitations had run).  Ms. Dees,

21   however, may argue at trial that Allstate violated the CPA in its review of Ms. Dees' PIP claim
     medical records and its subsequent affirmation of its denial of her PIP claim, as Allstate's review

22   and affirmation of its denial occurred in February 2009 (*see* 2/25/13 Resp. at 17), within the
     CPA's four-year statute of limitations.

ORDER- 14

1    Under the CPA, a plaintiff must prove that the defendant's act or practice (1) is

2    unfair or deceptive; (2) occurs in the conduct of trade or commerce; (3) affects the public

3    interest; (4) causes injury to the plaintiff's business or property; and (5) causes the injury

4    suffered.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531,

5    535 (Wash. 1986).  The CPA allows a plaintiff who has been "injured in his or her

6    business or property by a violation" to recover actual damages, trial costs, and attorney's

7    fees.  RCW 19.86.090; *Ambach v. French*, 216 P.3d 405, 407 (Wash. 2009).

8    Under the CPA, "injury is distinguished from damages."  *Sorrel v. Eagle*

9    *Healthcare, Inc.*, 38 P.3d 1024, 1028-29 (Wash. Ct. App. 2002).  The plaintiff need not

10   prove monetary damages so long as there is "some injury to property or business."  *Id.* at

11   1029.  A plaintiff satisfies the fourth and fifth elements of a CPA claim when he or she

12   proves that the defendant's unfair or deceptive act or practice deprived them of the use of

13   property.  *Id.*

14   Several recent decisions in this district lead the court to conclude that, under the

15   CPA, Ms. Dees cannot prove an injury to her business or property by solely alleging that

16   Allstate should have paid her medical bills, because those injuries are derivative of her

17   personal injuries.  Personal injuries are not compensable damages under the CPA and do

18   not constitute an injury to business or property.  *Ambach*, 216 P.3d at 408.  Additionally,

19   emotional damages, such a pain and suffering, and their attendant physical manifestations

20   are not compensable and do not constitute injury under the CPA.  *Wash. St. Physicians*

21   *Ins. Exch. & Assoc. v. Fison*, 858 P.2d 1054, 1064 (Wash. 1993).  "Where plaintiffs are

22

ORDER- 15

1  both physically and economically injured by one act, courts generally refuse to find

2  injury to business or property as used [in the CPA]." *Ambach*, 216 P.3d at 409.

3     In *Haley v. Allstate Ins. Co.*, No. C09-1494, 2010 WL 4052935 (W.D. Wash. Oct.

4  13, 2010), a court in this district, on similar facts, rejected the plaintiff's contention that

5  Allstate's failure to pay her medical bills from a car accident constituted a property

6  injury. *Id.* at *8.  In *Coleman v. Am. Commerce Ins. Co.*, No. 09-5721, 2010 WL

7  3720203 (W.D. Wash. Sept. 17, 2010), *aff'd* 461 F. App'x 600 (9th Cir. 2011), a court in

8  this district rejected the plaintiff's claim that the defendant insurance company's failure

9  to pay her UIM claim for PTSD resulting from a car accident constituted an injury under

10 the CPA.  *Id.* at *4.  Similarly, a court in this district found that a plaintiff could not show

11 injury under the CPA by alleging that the insurance company defendant's failure to pay

12 her full PIP benefits exacerbated her injuries and caused her to lose her job, as these were

13 personal injuries.  *Sadler v. State Farm Mut. Auto. Ins. Co.*, No. C07-995, 2008 WL

14 4371661, at *8-9 (W.D. Wash. Sept. 22, 2008).  The Ninth Circuit affirmed, holding that

15 the plaintiff's alleged injuries were personal injuries, citing to the Washington Supreme

16 Court's decision in *Ambach*.  *Sadler v. State Farm Mut. Auto. Ins. Co.*, 351 F. App'x 234,

17 236 (9th Cir. 2009).  The court finds these cases persuasive and applies their reasoning to

18 the instant case.

19    Ms. Dees cites no authority for the proposition that Allstate's failuire to pay her

20 medical bills constitutes an injury to her business or property.  Although Ms. Dees is

21 correct that money is property, and Allstate's alleged failure to pay her medical bills may

22 have caused her to pay those bills, payment for medical treatment "does not transform

1   medical expenses into business or property harm." *Ambach*, 216 P.3d at 409.[10]  Allstate,

2   as UIM insurer, "stands in the shoes" of the uninsured motorist.  *Barry*, 989 P.2d at 1176.

3   Ms. Dees' UIM claim, then, is substantially similar to the claim she would make if suing

4   the uninsured motorist directly.  That suit would be a personal injury suit.  Her claimed

5   CPA injury—unpaid medical bills for injuries arising from a car accident—are exactly

6   what she would recover in a successful personal injury suit against the uninsured driver.

7   Her CPA injury claim, then, is indistinct from her personal injury claim; her alleged CPA

8   injury is derivative of her personal injuries and, therefore, does not constitute a CPA

9   injury under *Ambach*.  *Ambach*, 216 P.3d at 408-09.[11]

10          The court, however, will not go so far as to categorically preclude Ms. Dees from

11  claiming injury to her property related to her car accident.  A CPA injury can include

---

13  [10] *But see Van Noy v. State Farm Mut. Ins. Co.*, 983 P.2d 1129, 1135 (Wash. Ct. App.
14  1999) (noting that plaintiffs might assert an injury under the CPA for "seeking a continuing
    course of medical or therapy treatment for which they may ultimately be deemed liable and
15  which they would not have pursued had they known.").  While *Van Noy* implies that plaintiffs
    might assert CPA injuries by claiming they sought medical care which they would not have
16  sought if they knew their insurer would not pay for it, the court declines to follow *Van Noy*.  The
    above quoted language is dicta; the court held only that summary judgment was precluded
17  because a material dispute of fact remained as to the plaintiffs' injuries.  *Id.*  Additionally, the
    Washington Court of Appeals decided *Van Noy* ten years before *Ambach*, in which the
18  Washington Supreme Court first unequivocally held that payment of medical bills for personal
    injuries did not constitute an injury to property under the CPA.  *Ambach*, 216 P.3d at 409.

19  [11] If a plaintiff proves an insurance company acted in bad faith, they also establish the
    first three prongs of the *Hangman* CPA test.  *Bryant v. County Life Ins. Co.*, 414 F. Supp. 2d
20  981, 1002-03 (W.D. Wash. 2006).  Thus, to the extent Ms. Dees bases her CPA claim on
    Allstate's bad faith actions, if she prevails on her CPA claim, she would likely prevail on her bad
21  faith claim.  As discussed above, Ms. Dees could potentially recover unpaid medical bills that
    Allstate should have paid if she succeeds on her bad faith claim.  She could also recover for the
22  same damages if she is successful on her breach of contract or IFCA claims.  She cannot,
    however, recover for these same damages more than once.

1  monetary losses; "[t]he injury element will be met if the consumer's property interest or

2  money is diminished because of the unlawful conduct even if the expenses caused by the

3  statutory violation are minimal." *Mason v. Mortgage Am., Inc.*, 792 P.2d 142, 148

4  (Wash. 1990).  Ms. Dees may be able to prove a property injury resulting from Allstate's

5  non-payment of her medical bills.  For instance, Ms. Dees could potentially claim that

6  Allstate's non-payment or delayed payment of medical bills caused her to incur a

7  financial loss apart from the unpaid medical bills themselves, such as interest on amounts

8  she borrowered to cover the costs. *See Sorrel*, 38 P.3d at 1029 (the plaintiff established

9  injury under the CPA where the defendant kept funds the plaintiff was rightfully entitled

10  to for two weeks).  As Ms. Dees has not yet quantified her damages, the court will not

11  issue an advisory opinion as to whether Ms. Dees' injuries in this case constitute injury

12  under the CPA.  The court encourages the parties to address the issue in their trial

13  briefing.

14      For the foregoing reasons, the court GRANTS in part and DENIES in part

15  Allstate's motion as to CPA damages.  Ms. Dees may claim injuries to her business or

16  property proximately caused by Allstate's allegedly deceptive act or practice.  Some of

17  these damages may relate to the underlying car accident.  The CPA will not, however,

18  allow Ms. Dees to recover for any personal injuries.

19

20

21

22

1 **E.     Washington Insurance Fair Conduct Act**

2     **1. Retroactivity**

3         Allstate argues that Ms. Dees' claim that Allstate unreasonably denied her PIP

4 benefits in violation of the IFCA fails because Allstate's denial occurred before

5 enactment of the IFCA.  (2/7/13 Mot. at 5.)  Ms. Dees concedes this issue.  (2/25/13

6 Resp. at 19.)  The court also agrees with Allstate.  The IFCA provides plaintiffs a cause

7 of action arising from an insurance company's unreasonable denial of coverage or

8 payment of benefits.  RCW 48.30.015.  "The operative date in determining whether the

9 IFCA applies is the date that a claim for coverage is denied." *Ledcor Indus. (USA) Inc. v.*

10 *Va. Sur. Co., Inc.*, 2011 WL 6140957, at *11 (W.D.Wash. Dec. 9, 2011).  Allstate denied

11 Ms. Dees' PIP claim on March 28, 2007.  (2/7/13 Boyd Decl. Ex. D at 2.)  The IFCA

12 became effective on December 6, 2007.  *Ledcor Indus. (USA) Inc.*, 2011 WL 6140957,

13 at *11.  The IFCA is not retroactive.  *Id.*  Accordingly, the court GRANTS summary

14 judgment in favor of Allstate as to Ms. Dees' IFCA claim arising from Allstate's denial

15 of her PIP claim.[12]

16     **2. Damages**

17         Allstate asserts that, if it is liable for an IFCA violation, it is liable only for those

18 damages proximately caused by Allstate's IFCA violation and not any personal injuries

19 resulting from the car accident.  In response, Ms. Dees argues that her right to recovery

20

21         [12] Although the court grants summary judgment in favor of Allstate as to Ms. Dees' IFCA
22 claim resulting from Allstate's denial of PIP coverage, Ms. Dees' IFCA claim that Allstate
unreasonably denied her UIM coverage remains.

1    under IFCA includes recovery of "actual damages," which she asserts might include,

2    *inter alia*, medical bills, lost wages, and pain and suffering.  (*See* 2/15/13 Resp. at 21.)

3    Allstate's position is correct in that Allstate is liable only for those damages proximately

4    caused by Allstate's IFCA violation, but otherwise Allstate's position goes too far.  By

5    the plain language of the statute "[a]ny first-party insured 'who is unreasonably denied a

6    claim for coverage or payment of benefits,' can sue to recover 'the actual damages

7    sustained . . . .'"  *Tavakoli v. Allstate Prop. and Casualty Ins. Co.*, 2012 WL 6677766,

8    at *9 (W.D. Wash. Dec. 21, 2012) (quoting RCW 48.30.015(1)).  "The actual damages

9    sustained from an 'unreasonbl[e] deni[al]' of benefits necessarily include (but are not

10   necessarily limited to) the benefits that were unreasonably denied."  *Id.*  Thus, an IFCA

11   claimant can recover policy benefits, subject to the policy's limits and other applicable

12   terms and conditions.  The court does not agree with Allstate that damages, such as

13   unpaid medical bills, lost wages, and pain and suffering cannot be recovered if those

14   damages also represent unreasonably denied UIM policy benefits.  Rather, if Ms. Dees'

15   medical bills, lost wages, and pain and suffering damages also represent unreasonably

16   denied policy benefits, then Ms. Dees may recover these amounts if she proves her IFCA

17   claim at trial.  Thus, the court GRANTS in part and DENIES in part Allstate's motion

18   with respect to Ms. Dees' IFCA damages.

19              **IV.    CONCLUSION**

20        For the foregoing reasons, the court GRANTS in part and DENIES in part

21   Allstate's 1/31/13 motion (Dkt. #36), GRANTS Allstate's 2/7/13 motion (Dkt. # 40), and

22

1  DENIES Allstate's 2/12/13 motion (Dkt. # 45).  All issues not specifically resolved

2  herein are reserved for subsequent disposition at trial or otherwise.

3      Dated this 21st day of March, 2013.

4

5

6  _____

7  JAMES L. ROBART
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 21